IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 CR 547 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| KHALIL SARRAJ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Khalil Sarraj ("Sarraj") is indicted for being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He moves for modification of the Seventh Circuit's pattern jury instructions for § 922(g) offenses. Sarraj argues that the pattern instructions do not account for his particular circumstance, in that the firearm which he possessed was a "prop" weapon owned by the Bureau of Alcohol, Tobacco, and Firearms ("ATF") and not a weapon "in" or "affecting" commerce. For the reasons below, Sarraj's Motion for Modified Jury Instruction Concerning Whether ATF Prop Firearms "Affected" Interstate Commerce (hereinafter "Def. Mot. Modified Jury Instruc.") is denied.[1]

## BACKGROUND

Sarraj was arrested in Chicago, Illinois on June 24, 2009 after purchasing two ATF "prop" firearms and associated ammunition from undercover ATF agents in the course of a "reverse sting"

---

[1] Notwithstanding the limited title of his motion, Sarraj argues both that the ATF prop weapons did not travel "in" interstate commerce, nor did they "affect" interstate commerce, after the date on which they came into the government's possession.

operation. *See* Compl. ¶¶ 12-14. The firearms are referred to as prop firearms because they are part of a collection of such weapons used by the ATF in sting operations. *See* Compl. ¶ 12. The parties agree that the firearms were operable and functional, and further agree that they were within the government's possession for at least some period of time prior to Sarraj's "purchase." *Id.*; *see* Def. Mot. Modified Jury Instruc. *See* ¶ 2. The record does not currently contain evidence indicative of when, or how, the firearms came into the possession of the ATF and began to be used as "prop" firearms. According to information provided by the government, the guns were manufactured in Massachusetts and Italy. *See* Def. Mot. Modified Jury Instruc. ¶ 2.

ATF agents were aware prior to the undercover operation that Sarraj had a previous state felony conviction, and Sarraj admitted such at the time of his arrest. *See* Compl. ¶ 14. He was therefore charged under § 922(g) which provides that any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" may not "possess in or affecting commerce, any firearm or ammunition . . . ." 18 U.S.C. § 922(g) and (g)(1). The criminal complaint stated that the prop firearms were "in and affecting interstate commerce in that they had traveled in interstate commerce before coming into defendant's possession." Compl. 1.

## DISCUSSION

Sarraj contends that the circumstances of his arrest entitle him to modified jury instructions as to the proof required for satisfaction of § 922(g)(1)'s jurisdictional hook, which mandates that the firearms involved be "in" or "affecting" interstate commerce. The Seventh Circuit pattern jury instruction for § 922(g) offenses allows the jury to find an interstate commerce connection if the firearm "traveled between one state and any other state or country, or across a state or national boundary line." Seventh Circuit Pattern Jury Instruction, 18 § 922(g) (Definition of commerce).

Sarraj argues that this is insufficient in his case because the guns used in the sting operation leading to his arrest were prop weapons exclusively controlled by the ATF for some, presumably discoverable, period of time. Therefore, the weapons could not have been "in" or "affecting" interstate commerce for at least that period of time. He requests a modified jury instruction stating:

> However, possession of a firearm which has been in the exclusive control of a federal law enforcement agency for law-enforcement purposes, including displays, demonstrations, or use as undercover "props," is not a firearms possession that is "in" or "affecting" interstate commerce, even if it traveled in interstate commerce at some time before the agency obtained it for use as a prop.

Under this proposed instruction, even if the government proves that the firearms were manufactured in Massachusetts and Italy, and as such, must have traveled in interstate commerce before coming into Sarraj's possession in Illinois, the government would still fail to meet § 922(g)(1)'s jurisdictional requirements because ATF's exclusive control of them negates that interstate connection. Sarraj acknowledges that his proposed instruction represents a departure that would not only upset settled precedent, but would call into question all § 922(g)(1) prosecutions arising from "reverse sting" operations carried out using ATF prop firearms. *See* Def. Mot. Modified Jury Instruc. ¶ 16. Sarraj, nevertheless, argues that such a change represents a logical evolution of the law.

Title 18 U.S.C. § 922(g) imposes "no more than a minimal [interstate commerce] nexus requirement" that is satisfied "as long as a firearm moved across state lines at some point prior to the defendant's possession of it . . . ." *United States v. Rice*, 520 F.3d 811, 815 (7th Cir. 2008) (citing *Scarborough v. United States*, 431 U.S. 563, 577 (1977) (interpreting Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, the legislative predecessor to § 922(g))). Although Commerce Clause jurisprudence has shifted in recent years, the Seventh Circuit has held

that the constitutionality of § 922(g) is saved by its express jurisdictional element, which "ensure[s], through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *United States v. Lemons*, 302 F.3d 769, 772 (7th Cir. 2002); *see also United States v. Bell*, 70 F.3d 495, 498 (7th Cir. 1995) (finding § 922(g)(1) "to be immune from constitutional attack under *Lopez*"). *Lemons* and its predecessors held that the narrowing of the Commerce Clause reflected in *United States v. Lopez*, 514 U.S. 549 (1995), which struck down a federal statute criminalizing possession of firearms in school zones, did not cast doubt on the constitutionality of § 922(g), because § 922(g) required that proof of an interstate commerce nexus be offered in each individual case. *See Lemons*, 302 F.3d at 772 (collecting prior Seventh Circuit cases with the same holding). Indeed, the Seventh Circuit has gone so far as to hold that a direct challenge to the constitutionality of § 922(g) under the Commerce Clause "would be frivolous." *United States v. Kruger*, 75 Fed. Appx. 514, 516 (7th Cir. 2003).

The present attack on § 922(g)(1) is not frivolous, as the Seventh Circuit has not previously addressed the question of whether government prop firearms can fairly be considered "in" or "affecting" commerce. It has held, however, that a "single journey across state lines, however remote from the defendant's possession, is enough to establish the constitutionally minimal tie of a given weapon to interstate commerce." *United States v. Lewis*, 100 F.3d 49, 52 (7th Cir. 1996). Moreover, the Seventh Circuit has consistently and frequently explained that § 922(g) requires only that the implicated firearm have traveled in interstate commerce at some point, however remote or fixed in time, prior to the defendant's coming into possession of it. *See, e.g.*, *United States v. White*, — F.3d —, 2009 WL 3078293 at *12 (7th Cir. Sept. 29, 2009) ("The dispositive inquiry is whether the gun crossed state lines at some point."); *Rice*, 520 F.3d at 815 ("[W]e have held on numerous

occasions that so long as a firearm moved across state lines at some point prior to the defendant's possession of it, the possession satisfies § 922(g)(1)'s "in or affecting commerce" requirement."); *United States v. Humphreys*, 468 F.3d 1051, 1053 (7th Cir. 2006) ("'[T]he requisite interstate commerce nexus can be established . . . merely by evidence that the gun was manufactured outside the state in which it was possessed.'") (quoting *United States v. Coleman*, 22 F.3d 126, 130-31 (7th Cir. 1994)).

Although Sarraj presents a creative case for narrowing the law to exclude firearms that have been out of the stream of interstate commerce for a known period of time, *see* Def. Mot. Modified Jury Instruc. ¶¶ 7-8, there is no legal support for such an expansion. Sarraj argues that his case is distinguishable because "the point at which the firearm left interstate commerce is readily discernible." *See* Def. Mot. Modified Jury Instruc. ¶ 11. Existing caselaw recognizes no such distinction.[2] "[S]o long as the firearm crossed state lines at any point prior to the defendant's possession of the gun, his possession is 'in or affecting commerce.'" *United States v. Williams*, 410 F.3d 397 , 400 (7th Cir. 2005). This is not a situation where "there is insufficient evidence to prove that the [firearm] moved in interstate commerce at any time." *Id.*

Sarraj's Motion for Modified Jury Instruction Concerning Whether ATF Prop Firearms "Affected" Interstate Commerce is denied.

So ordered.

---

[2] The one case in which the Seventh Circuit has held that § 922(g)(1)'s jurisdictional requirement was not met relies on different grounds, as the government had failed to offer sufficient evidence that the gun had been manufactured outside of the state where it was seized. *See United States v. Groves*, 470 F.3d 311, 325 (7th Cir. 2006).

Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: October 29, 2009